```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| ERIC HOLDER,<br><br>        Plaintiff,<br><br>  v.<br><br>SUSAN MAURER, ET AL.,<br><br>        Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 02-cv-2545 (JEI)<br><br><br>**OPINION** |

**APPEARANCES:**

ERIC HOLDER, Plaintiff *Pro Se*
# 257240/236768B
Bayside State Prison
4293 Rt. P.O. Box F-1
Leesburg, NJ 08327

MURPHY & O'CONNER
BY: STEPHEN E. SIEGRIST
Commerce Center
1810 Chapel Avenue West, Suite 130
Cherry Hill, New Jersey 08002-4607
    Counsel for Defendants Ellen Warner, George Achebe, M.D.,
    Raymundo Tagle, M.D., Rizwana Hamid, M.D., Nora Dunn and
    Mary Thomas

OFFICE OF THE NJ ATTORNEY GENERAL
BY: CHRISTOPHER C. JOSEPHSON
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, NJ 08625-0112
    Counsel for Defendant's Woolson, Pitts, Zeck, Ware, Heise,
    Burnett, and Carrol

ORLOVSKY, MOODY, SCHAAFF & GABRYSIAK
BY: PAUL F. SCHAFF
187 Highway 36
W. Long Branch, NJ 07764
    Counsel for Defendant Shah

**IRENAS**, Senior District Judge:

This action revolves around the type and quality of medical care provided to Eric Holder ("Plaintiff"), an inmate, during a two-week period in which Plaintiff was under "observation" in the New Jersey State Prison ("NJSP") infirmary and the time period immediately thereafter.  The portion of Plaintiff's Complaint relevant to the instant Motion for Summary Judgment alleges that Plaintiff's Eighth Amendment rights were violated by Defendants Ellen Warner, George Achebe, M.D., Raymundo Tagle, M.D., Rizwana Hamid, M.D., Nora Dunn and Mary Thomas[1] (the "moving Defendants") because they provided inadequate medical care, amounting to deliberate indifference to Plaintiff's serious medical needs.  The moving Defendants contend that there are no genuine issues of material fact and there is insufficient evidence to establish that they ignored Plaintiff's medical needs.

The moving Defendants' Motion for Summary Judgment will be granted.[2]  While Plaintiff may have had a serious medical condition, he cannot show that the moving Defendants acted with

---

[1] These Defendants work at the NJSP facility.  Other Defendants not involved in the instant motion include correctional officers from South Woods State Prison, a dietitian and nurse at NJSP, a hearing officer at NJSP and an assistant prosecutor for Cumberland County.

[2] Since Plaintiff does not contest the Motion for Summary Judgment as to Defendant Rizwana Hamid, M.D., summary judgment will be entered in favor of Dr. Hamid.  (Pl.'s Resp. to Summ. J.)

2

deliberate indifference.  Thus, as a matter of law, Plaintiff can not prove a constitutional violation.

I.

The test for summary judgment is stated in Rule 56 of the Federal Rules.  Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding a motion for summary judgment, the court must construe the facts and inferences in a light most favorable to the non-moving party.  *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986).  The role of the court is not "to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  However, "a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but. . . must set forth specific facts showing that

3

there is a genuine issue for trial." *Id*. at 248 (citation omitted).

## II.

Plaintiff is currently a prisoner at Bayside State Prison, in Leesburg, New Jersey. On January 18, 2001, Plaintiff was involved in a physical altercation with multiple officers while incarcerated at South Woods State Prison ("South Woods"). (Pl.'s Compl. at ¶¶ 19-40.) Plaintiff was seen by two nurses at South Woods, and then sent to Bridgeton Hospital. (Def.'s Stmnt. of Facts at ¶ 30.) Later that day, Plaintiff was transferred to NJSP and admitted to the infirmary. (Pl.'s Compl. at ¶¶ 50-51.)

Upon arrival at NJSP, Plaintiff was examined by Nurse Taylor, a NJSP nurse, "for the initial nursing intake assessment." (Achebe Cert. at ¶ 4, attached as Def.'s Ex. "D" in Supp. of Mot. for Summ. J.) That evening, Nurse Taylor advised Dr. Achebe, a physician employed by Correctional Medical Services, Inc. ("CMS"), the medical provider at NJSP, that Plaintiff had "some swelling around one eye, and a pre-existing condition of hypertension, and left eye blindness due to

neuritis."³  (*Id.*)  In addition, Nurse Taylor prescribed Hydrodiuril Tabs, Altace (both are medication for hypertension), and multivitamins.  (Jail Med. R. at 39, attached as Ex. "L" in Supp. of Mot. for Summ. J.)

Based on Nurse Tayor's assessment, Dr. Achebe ordered that Plaintiff be observed in the infirmary.  (Achebe Cert. at ¶ 4.) Since Plaintiff was awaiting a hearing based on the altercation at South Woods, he was placed in a cell located within the infirmary.  (*Id.* at ¶ 5.)  According to Dr. Achebe, the prison rules provide "[w]hen an inmate is in pre-hearing detention, the doctors and nurses are not allowed to enter his cell in the infirmary without a Correctional Officer Supervisor and another correctional officer being present." (*Id.*)  However, the inmate can be observed through a window on the cell door without supervision.

The next day, January 19, 2001, Dr. Achebe made observations and communicated with Plaintiff through the window in the cell door.  (*Id.* at ¶ 10.)  Plaintiff complained to Dr. Achebe about pain in his eyes and extreme head pain, especially around the left and right temple areas.  (Pl.'s  Compl. at ¶ 53.)  In addition, Plaintiff informed Dr. Achebe that he could hardly speak because of a swollen mouth, his left eye was almost closed,

---
³ Neuritis is an inflamed nerve.

5

his right eye had dark spots, he was dizzy, and he had back, wrist, and ankle pain with numbness. (*Id*.)  Dr. Achebe concluded that Plaintiff's vision was normal, and recommended that Plaintiff remain in the infirmary for further observation and continue the previously ordered medications.  (Jail Med. R. at 48.)

On the same day, Nurse Dunn, who is believed to be an employee of Dr. Shah (an ophthalmologist not employed by CMS), examined Plaintiff through the window in the cell door during nursing infirmary rounds.  (Dunn Interrog. at ¶ 5, attached as Ex. "H" in Supp. of Mot. for Summ. J.)  Nurse Dunn stated that "[t]he inmate did not offer any complaints at that time. His face remained red.  He accepted medication." (*Id*. at ¶ 13.)  Nurse Dunn observed Plaintiff on the evening rounds and was the third nurse to observe him that day.[4]  (Jail Med. R. at 49-152.)

During the evening rounds on January 20, and January 21, 2001, Nurse Dunn observed Plaintiff and on both days noted that Plaintiff denied discomfort and accepted his medications.  (*Id*. at 54-62.)  On January 22, 2001, Dr. Achebe also observed

---

[4] Nurses make infirmary rounds three times a day, one during the night, one during the day, and one during the evening.  (Jail Med. R.)  According to the medical records, Plaintiff was observed three times a day by a total of seven different nurses during the two-week period at issue in his complaint.  (*Id*. at 39-162.)

6

Plaintiff.  (*Id*. at 67.)   Dr. Achebe prescribed Motrin and sulfacetamide sodium eye drops for Plaintiff.  (*Id*. at 68.)

On January 25, 2001, Dr. Achebe again observed Plaintiff. (*Id*. at 83-91.)  Dr. Achebe continued the treatment program existing at that time.  (*Id*. at 89.)  Dr. Achebe made another observation on January 26, 2001.  (*Id*. at 96.)  On January 29, 2001, Dr. Tagle, a physician at NJSP also employed by CMS, observed Plaintiff and advised that the course of care be continued.  (*Id*. at 110-12.)

At some time during this first week of treatment, Dr. Achebe made an appointment for Plaintiff to see an ophthalmologist "just to be sure that there was no injury to the plaintiff's eyes from the altercation with the correctional officers."  (Achebe Cert. at ¶ 6.)  On January 30, 2001, Dr. Achebe observed Plaintiff and noted in his report that the ophthalmologist appointment would need to be rescheduled because the ophthalmologist did not show up for the appointment. (Jail Med. R. at 117-19.)  Nurse Warner also noted in her report that the ophthalmologist did not show up.  (*Id*. at 117.)

Also, on January 30, 2001, Dr. Achebe ordered a sodium restricted diet for Plaintiff as Plaintiff requested such a diet the evening before.  (*Id*. at 114, 119.)  Dr. Achebe made further

7

observations of Plaintiff on February 1, 2, and 5, 2001.  (*Id*. at 132-61.)  On February 5, 2001, Dr. Achebe noted in his report that Plaintiff was "doing fine" and discharged Plaintiff from the infirmary.  (*Id*. at 160-62.)

After Plaintiff's release from the infirmary, his medical treatment continued.  Plaintiff, however, wrote to Nurse Warner to complain of his condition on two occasions, on February 7, 2001, and again on February 17, 2001.  (Med. Compl., attached as Ex. "E" in Supp. of Pl.'s Resp. to Summ. J.)  Plaintiff's medications were refilled on February 27, 2001.  (Jail Med. R. at 162-65.)  Dr. Achebe made a chart note on March 3, 2001, for an ophthalmologist appointment.  (*Id*. at 166-67.)  On March 5, 2001, Plaintiff had his rescheduled ophthalmologist appointment with Dr. Shah.  (Achebe Cert. at ¶ 8.)  Plaintiff was also seen by Dr. Tagle, who reviewed Dr. Shah's report, and prescribed Tylenol tablets as well as a follow-up appointment with an ophthalmologist.  (Jail Med. R. at 170-74.)

On March 21, 2001, Nurse Thomas examined Plaintiff for a Code 53 Emergency.[5]  (*Id*. at 176.)   Plaintiff complained of dizziness and pain.  (*Id*.)  Nurse Thomas prescribed Naprosyn tablets for Plaintiff's headaches.  (*Id*.)  Plaintiff was seen by

---

[5] A Code 53 Emergency appears to be an unscheduled visit to the infirmary. Evidently, Plaintiff was sent there after collapsing to the floor with head pain.  (Pl.'s Resp. to Summ. J.)

8

Nurse Thomas again, on March 27, 2001, for a sick call. (*Id.* at 181-83.) Plaintiff was agitated and complained that "nobody is taking care of my eye problem." (*Id.* at 181-82.) Plaintiff continued to be seen by various doctors and nurses until Plaintiff was transferred to another prison on August 7, 2002. (Def.'s Stmnt. of Facts at ¶¶ 8-11; *see also* Jail Med. R.)

III.

Plaintiff brings his Complaint under 42 U.S.C. § 1983, alleging that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.[6] Plaintiff alleges that the moving defendants acted with deliberate indifference to his serious medical needs when they failed to alleviate his pain and suffering.[7]

Specifically, Plaintiff's Complaint focuses on the fact that the moving Defendants did not obtain a corrections officer's supervision so that a physical examination of Plaintiff could be

---

[6] There is no dispute that the moving Defendants are state actors for the purposes of 42 U.S.C. § 1983.
[7] He claims that Nurse Warner and Dr. Achebe were deliberately indifferent in their supervisory roles. The record indicates that while Dr. Achebe had direct interaction with Plaintiff during the two week confinement, Nurse Warner made only one chart note on January 30, 2001, which dealt with the ophthalmologist appointment, and otherwise did not play a hands on role in Plaintiff's day-to-day care. (Achebe Cert. at ¶ 7; *see also* Mot. for Summ. J. at 5.) He also claims that all the moving defendant's knew the extent of his suffering, but took no action to alleviate his pain or improve his condition.

9

performed while he was under observation in the infirmary for approximately two weeks. Plaintiff suggests that it was "impossible to provide adequate medical care" when the nurses and doctors did not enter the cell. (Pl.'s Resp. to Summ. J.) Plaintiff points out that by not entering his cell, the medical staff could not conduct certain exams, including a physical examination and a check for vital signs. (*Id.*) Plaintiff also alleges that after the initial infirmary period the moving Defendants ignored his complaints and did nothing to alleviate his "constant pain and suffering."[8] (*Id.*)

Dr. Achebe explains his decision to follow the above described course of care in his certification, stating that "it was not medically necessary for either myself, Dr. Tagle or the nurses to physically enter the cell" during Plaintiff's two-week stay in the infirmary under pre-hearing detention status. (Achebe Cert. at ¶ 9.) Dr. Achebe concluded that "[i]t was medically sufficient that the nurses made observations and communicated with the inmate through the cell door window . . . and provided

---

[8] Nurse Thomas did not have contact with Plaintiff during the time that he was in the infirmary in January and February of 2001. (Thomas Interrog., attached as Ex. "I" in Supp. of Mot. for Summ. J.) Plaintiff's allegations regarding Nurse Thomas go to his claims for the period following his discharge from the infirmary, specifically when he was seen by her in March, 2001, she "did nothing but gave plaintiff more of the some pain killers." (Pl.'s Resp. to Summ. J.)

10

the inmate with his medications [including Motrin, HCTZ, a multivitamin, Altace, and Sulfacitamide sodium solution eye drops] through the small opening in the cell door." (*Id*. at ¶¶ 6, 9.)

### IV.

In *Estelle v. Gamble*, the Supreme Court held that the Eighth Amendment requires the government to provide incarcerated prisoners with reasonable medical care. 429 U.S. 97, 103-04, (1976). Because an inmate relies on prison authorities to treat his medical needs, the Supreme Court held that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment." *Id*. at 104 (citations omitted). The standard provided by *Estelle* is a two-pronged test, requiring a showing that prison officials acted with deliberate indifference to the prisoner's serious medical needs. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979).

### A.

A "serious medical need" is a condition "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Colburn v. Upper Darby Tp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (citations omitted); *cf. Boardley v. Fist Correctional Medical*, No. 03-343, 2004 WL 2980727 (D. Del. Dec. 21, 2004) (plaintiff's allegation that a delay in performing surgery on his reoccurring ingrown toenails hindered his mobility failed because there was no serious medical need); *Holland v. Correctional Medical Systems*, No. 03-053, 2004 WL 322905 (D. Del. Feb. 11, 2004) (plaintiff's request for a lance procedure, "which generally is a procedure for relieving a boil or blister or similar minor dermatological condition," was held to be insufficiently serious).

The physical altercation at South Woods left Plaintiff with injuries sufficiently serious to warrant a trip to the hospital. Upon arrival at NJSP, Plaintiff was immediately sent to the infirmary for observation. Based on the medical opinion of Dr. Achebe, Plaintiff was kept in the infirmary, under continuous observation, for two weeks. During that time, Plaintiff was prescribed a course of treatment including multiple types of medication. In addition to suffering from pain and discomfort,

12

Plaintiff also alleges that his vision was impaired, he needed blood pressure treatment and he complained of dizziness. It is not disputed that the medical staff determined that he required some level of treatment for his injuries. Plaintiff has raised genuine issue of material fact as to whether his condition was sufficiently serious to meet the *Colburn* standard.

### B.

A prison official's denial of a reasonable request for medical treatment rises to the level of deliberate indifference when "such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury.'" *Monmouth County*, 834 F.2d at 346 (citations omitted). In addition, deliberate indifference may be established where an official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citations omitted).

A deferential standard is applied in reviewing the actions of prison doctors and medical staff. *Inmates of Allegheny County Jail*, 612 F.2d at 762. Courts tend not to second guess the

adequacy of particular courses of treatment prescribed by professional doctors. *See id*. Medical malpractice is "not a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106. The prison doctor's act or omission must be "sufficiently harmful to evidence deliberate indifference" and "only such indifference that can offend 'evolving standards of decency'" violates the Eighth Amendment. *Id*.

Mere disagreements over the proper course of treatment do not support a claim of deliberate indifference. *Monmouth County*, 834 F.2d at 346 (citations omitted); *see also White v. Napoleon*, 897 F.2d 103, 109-10 (3d Cir. 1990); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Where inmates have received some level of medical care courts will generally not find deliberate indifference. *Christy v. Robinson*, 216 F. Supp. 2d 398, 413-14 (D.N.J. 2002) (citations omitted); *see also Smith v. Herbert*, No. CIV. A. 93-2906, 1994 WL 2524, at *2 (E.D.Pa. Jan. 3, 1994) (granting summary judgment in favor of the defendants because "[t]his is not a case where plaintiff's complaints were ignored or where he was not seen by medical personnel; instead, the undisputed evidence indicates

14

that the medical personnel actively pursued treatment for plaintiff").

Even when drawing all reasonable inferences in favor of Plaintiff, the record fails to establish that the moving Defendants acted with deliberate indifference.

Plaintiff's complaint amounts at most to a disagreement between his idea of how he should be treated and Dr. Achebe's medical opinion that it was not necessary to enter Plaintiff's cell to physically examine Plaintiff.  As in *Herbert*, the undisputed medical records show that this is not a case where a prisoner was ignored entirely by medical personnel.  To the contrary, the evidence indicates Plaintiff was actively attended to by the medical staff.  Plaintiff was seen continuously by seven nurses and two doctors over the course of the two weeks at issue.

In addition, Plaintiff was able to articulate concerns and communicate with the medical staff.  The record shows Plaintiff's comments were documented by the nurses, who closely monitored his condition, and addressed.  Evidence of such communication is found in the fact that Dr. Achebe altered Plaintiff's diet in response to Plaintiff's communicated request.  In response to Plaintiff's complaints about pain, Dr. Achebe attempted to make

15

Plaintiff more comfortable by prescribing him medication for pain. Plaintiff was seen by an ophthalmologist, as an additional precaution. Plaintiff may disagree with the chosen course of treatment, but such a disagreement does not amount to a constitutional violation. *See Monmouth County*, 834 F.2d at 346. There is no indication that Dr. Achebe or the other moving Defendants intentionally refused to provide care or delayed care based on non-medical reasons.

Likewise, Plaintiff's complaints regarding his treatment after he was released from the infirmary constitute dissatisfaction with the medical treatment he received, but not deliberate indifference. The medical records show that Plaintiff received a great deal of medical attention, including prescriptions for multiple types of pain killers. The record also shows that the medical staff responded, albeit not in the manner preferred by Plaintiff, to Plaintiff's complaints.

Plaintiff is unable to produce sufficient evidence upon which a reasonable jury could find that the moving Defendants acted with deliberate indifference to Plaintiff's serious medical needs. There is no dispute of material fact – the record indicates numerous consultations, prescriptions and commentary by the medical staff and is not contested by Plaintiff. In

addition, there is no dispute of law.  The moving Defendants' actions do not suggest deliberate, unnecessary, and wanton infliction of pain that would offend evolving standards of decency.  *See Estelle*, 429 U.S. at 104-06.

V.

For the reasons set forth above, the Court will grant Defendant's Motion for Summary Judgement.  The Court will issue an appropriate Order.

Date:   7/18/05

s/*Joseph E. Irenas*
Joseph E. Irenas, S.U.S.D.J.